————ᐧᐧᐧᙨ ⓔ ᙨᐧᐧᐧᐧ————

RIFE *against* GALBREATH and Others.

IN ERROR.

A feigned issue was ordered by the Orphans' Court upon an administration account, the object of which, from the evidence given in the cause, seemed to be to determine with how much an executor was chargeable; but the issue had been joined on a declaration upon a wager that the defendant had received ten thousand dollars, part of the estate of the testator.       *Held:* That such issue was not calculated to meet the design, and that under it the single fact put in issue was, did the plaintiff receive $10,000 of the estate of the testator as executor?

It seems, an issue directed by the Orphans' Court, for the purpose of deciding generally, what sum of a decedent's estate is in the hands of his administrator or executor, is objectionable.

It would be well if the same precision were to be observed in these issues, directed by the Orphans' Court, to settle administration accounts, as is required in forming an issue before auditors in an action of account render.

Where upon the trial of such issue, the court charged the jury, that "the witnesses say that after the death of H. R. sr. the sons took possession of the personal property, and D. one of them sold his moiety to H. the other.       *This establishes his possession* and his transfer for a full consideration.       Each executor having taken one-half of the personal estate, in his own right, as devisee, and D. having converted his into money, *it leaves him liable,* to that extent, both to the legatees and creditors."       *Held:* That such charge, upon the evidence in the cause, withdrew the facts from the jury, and was error.

Upon such issue, where it was in evidence, that the co-executor of the defendant had settled an administration account, charging himself with the whole inventory, and crediting him with payments made, it is error to charge the jury, that the defendant is chargeable with one-half the inventory, and interest, and was not entitled to be credited with one-half the credits in such account of his co-executor.

Upon an issue to try with what amount an executor is chargeable, as such, the will is evidence to shew his appointment as executor, and his duties under the will; and if these were unnecessary, giving it in evidence could do no injury.

ERROR to the Court of Common Pleas of *Adams* county.

This was a feigned issue, which it seemed, had been directed by the Orphans' Court of that county.       The order of that court directing the issue, was not brought up with the record.       The declaration counted of a wager, between *William Galbraith, Peter*

(Rife *v.* Galbreath.)

*Culp, John Ebert, William Wert* and *Henry Witmer*, who were legatees under the will of *Henry Rife*, deceased, and *Daniel Rife*, the defendant below, who was co-executor with *Henry Rife, jr.* of the said will, and survived the said *Henry Rife, jr.* that "part of the estate of *Henry Rife, sr.* deceased, amounting to the sum of ten thousand dollars," "came to, and was then in the hands of the said *Daniel Rife*, as surviving executor of the last will and testament of *Henry Rife, sr.* deceased." The defendant in his plea, admitted the wager, but denied that he had "received the said sum of ten thousand dollars, part of the estate of the said *Henry Rife, sr.* deceased, in the said declaration mentioned," or that he was chargeable therewith, as surviving executor, &c. Upon this plea issue was joined.

The plaintiff offered in evidence the will of *Henry Rife*, dated the 21st of March, 1820, bequeathing certain legacies, &c. and appointing *Henry Rife* and *Daniel Rife*, the sons of the testator, his executors, and the letters testamentary issued thereon to them, which being objected to, the court admitted the evidence, and sealed a bill of exceptions.

An inventory of the personal estate of *Henry Rife, sr.* deceased, filed by the executors, the 2d day of January, 1826, amounting to the sum of two thousand six hundred and eleven dollars and four-teen and one-half cents, was in evidence. The administration account of *Daniel Rife*, exhibited by himself, into the Register's office, upon citation, charged him with nothing.

Several witnesses proved, that after the death of the testator, *Daniel* and *Henry* went into the possession of the personal pro-perty, and occupied a farm which belonged to the testator, that they farmed together, and used the personal property on the farm, worked the horses, &c. and that there was no difference in the use of the property by them, before the testator's death, when they lived with him, and afterwards; but that neither took particular possession of any part of the personal property. That all the deal-ings, in reference to the business in which they were engaged, were with *Henry*, who seemed to be the chief manager, who also acted as executor, and that *Daniel* was never seen to act as such, or make any contracts or purchases. After living together for eighteen months or two years after the death of the testator, *Daniel* went to the state of *Ohio*, and was away for some time. Their occupation in common of the property, continued about eighteen months or two years. On the 30th of March, 1821, *Daniel Rife*, transfered all his interest in the real and personal estate of his father, as legatee and devisee under his will, to *Henry* his bro-ther.

Two judgments entered on the 19th of October, 1826, on two notes, dated respectively on the 1st and 15th of March, 1821, and

(Rife *v.* Galbreath.)

amounting to the sum of nine hundred and nienty-eight dollars, in favor of *Daniel Rife* against *Henry Rife*, were in evidence, as also another judgment, on notes bearing date in the year 1821, for two hundred and thirty-five dollars and forty-two cents, given by *Henry* to *Daniel.* An administration account was settled by *Henry Rife, jr.* deceased, in which he charged himself with the whole inventory, and was allowed credits to the amount of one thousand six hundred and thirty-three dollars and seventy-one cents, which left a balance in his hands of nine hundred and seventy-seven dollars forty-two and cents.

The Court of Common Pleas charged the jury, that "the personal estate is first liable for the payment or use of debts or legacies. This is contemplated in the will of old *Henry Rife.* All his personal property, therefore, went into the hands of the two executors, as a fund pledged for the payment of the debts and legacies. It was so pledged by operation of law. The witnesses say, that after the death of *Henry Rife, sr.* the two sons took possession, and afterwards *Daniel* sold his moiety to his brother *Henry* for a large consideration. This establishes his possession, and his transfer for a full consideration. Each executor having taken one-half of the personal estate, in his own right, and *Daniel* having converted his half into money, it leaves him liable to that extent, both to legatees and creditors. He would only be liable for one-half of the inventory, but the jury may charge interest thereon, from a year after the death of the testator. You have nothing to do with the credits. The issue is to try what the defendant is chargeable with, in his administration account, the credits will be allowed by the Orphans' Court."

A verdict having passed for the plaintiffs, the defendant brought this writ to reverse the judgment entered thereon, and now assigned for error,

1. The court erred in charging the jury what the facts were, and instructing them to find accordingly. The facts should have been left to the jury.

2. In instructing the jury, that the defendant was chargeable with the one-half of the inventory and interest, and not to be credited with the one-half of the credits in *Henry's* account.

3. In admitting the will of *Henry Rife, sr.* in evidence.

*Stevens* for the plaintiff in error. There was no evidence that *Daniel* had ever received a cent owing to the testator's estate, or that he had ever paid any debts due by it; nor that he had ever sold, or disposed of any article of property belonging to the estate; although he, as a devisee, and legatee under the will, may have

appropriated his interest in the estate, by assigning it. All this could not make him liable for his co-executor. But the court withdrew the facts from the jury, as they did also the credits, to which, in any aspect of the cause, the defendant was entitled, and which were evidenced by the administration account of *Henry.* Besides, the issue was whether the defendant had received, and was chargeable with ten thousand dollars, as the surviving executor of *Henry Rife*, and as the plaintiff's failed to establish the fact, that he had received, and was chargeable with *that sum*, the issue should have been found for the defendant, who, in this view of the case, should have been permitted the benefit of the consideration of the credits by the jury.

*Carothers* for the defendant in error. The issue formed was a feigned issue, a mere fiction; the substance of the controversy was to determine the amount with which the defendant was chargeable as executor of *Henry Rife*, sr. It was ordered by the Orphans' Court, for this purpose, when his administration account was presented in that court, and contemplated the further action of that court when the issue was decided. The credits to which the defendant was entitled, were no part of the issue, they were not in dispute; and would of course be allowed by the Orphans' Court, when the defendant's account came to be finally passed.

This case had been before this court on a former occasion, and is reported in 2 *Rawle,* 144, to which he referred.

He contended that upon the evidence the defendant was clearly liable, and that the case was stronger than the case of *M'Coy* v. *Porter,* 15 *Serg. & Rawle,* 57, in which the executor was charged. He denied that the court had withdrawn the decision of the facts from the jury. They had expressed an opinion of the facts, which was not error. *Riddle* v. *Murphy,* 7 *Serg. & Rawle,* 230.

But it is a well settled principle, that whenever a trustee transfers or assigns his interest in the trust property, he is estopped to say that he never had it in possession. He argued that the deed of assignment from *Daniel* to *Henry* had that effect, and authorized the court so to charge the jury.

The court's opinion was delivered by

KENNEDY, J.—The feigned issue directed to be tried in this case, if we are at liberty to conjecture the object of it, seems not to be formed, so as to meet the design. From the evidence given on the trial it is certain that it was not joined for the purpose of deciding, whether *Daniel Rife*, who was the defendant there was chargeable with one single item, amounting to ten thousand dollars, of the estate of *Henry Rife,* sr. the deceased testator, where the only

(Rife *v.* Galbreath.)

question was, whether he was to be charged with an indivisable item of ten thousand dollars, and he was either to be charged with the whole of it, or no part of it.    I say, from the course of the trial, and the evidence given on it, this could not have been the object of the feigned issue, because there was evidence given on the part of the plaintiff below, of the whole personal estate of the testator, consisting of many articles and items, and they claimed to charge *Daniel Rife*, with the aggregate amount of the whole estate of the testator; which fell greatly short of ten thousand dollars.    But from the issue as it is joined upon the record, the single point to be settled is, whether *Daniel Rife* received ten thousand dollars, part of the estate of *Henry Rife* the testator, as his surviving executor.    From what was disclosed upon the trial, it is evident that the plaintiffs below, could never have thought, that *Daniel Rife* had received any such sum as ten thousand dollars of the estate, because they must have known well, that the whole estate never amounted to but little more than one fourth of that sum.    Many errors, as well as great injustice, must necessarily grow out of not stating the fact or facts contested between the parties specifically, and making the precise points of the issue or issues which are to be settled by a jury.    It would be well if the same precision and minuteness were to be observed in these issues, directed by the Orphans' Court, to settle an administration account, as is required in forming an issue before auditors in an action of account render.    If this course were observed, every thing that is admitted and agreed on between the parties litigant, would be excluded by the form and terms of the issue or issues, from the consideration of the jury, and leave no ground for mistake or misapprehension afterwards of what was tried, and the extent of the liability under the finding of the jury.    We had another case before us at this term, in which the Orphans' Court directed an issue in general terms, to try and determine how much of the estate of the intestate had come to the hands of the defendant, who was a co-administrator, and with how much he was chargeable.    In the account which he had stated before the register, he had charged himself with upwards of twelve hundred dollars, and on the trial of the feigned issue, it was a question of law upon which the direction of the court below was asked to the jury, whether if the jury should be of opinion, that the defendant was chargeable with nothing more than what he had admitted himself to be, in his administration account, and which in reality was never in dispute, they should find a verdict in favor of the plaintiffs or the defendant, the court in that event directed the jury to find in favor of the defendant, and this was assigned for error in the case. 3 *Penn. Rep.* 183. Now if the judges, who had directed the issue in this last case, and who afterwards formed the court in which the issue was tried, had died without any further account

(Rife *v.* Galbreath.)

being settled, I am inclined to think, that the finding of the jury, would have presented evidence perhaps conclusive, of an entire acquittal, to the defendant.    Yet those who were acquainted with the circumstances of the whole proceeding, could never doubt but that the defendant ought to be accountable for the amount with which he had charged himself in his account, notwithstanding the finding of the jury in his favor, which was clearly a response to the general question submitted to them, what was he chargeable with?    There is also an objection, as it appears to me, to the propriety of the Orphans' Court directing an issue to be tried by a jury for the purpose of deciding generally, what sum or amount of money or estate of the deceased, in the hands of the accountant, he is to be charged with.    Such issue, unless there be a special direction to the contrary, as there is sometimes in an order of a Court of Chancery for the trial of an issue, on a matter of fact, must be tried according to the course of the common law; and the same rules, in respect to evidence, prevail as in other cases.    This would perhaps be in violation of the rights of the accountant, who, as I conceive, according to the universal practice of this state, and that too, I may say, time out of mind, has been admitted in many cases to discharge himself by his own oath or affirmation, from certain items or claims, as well as to entitle himself to certain credits, in part at least, by the like testimony.    It does appear to me, that accuracy, convenience and justice all join in pointing out a different course to be pursued in these cases, from that of the present or the one alluded to.    In the present case the single fact put in issue is, did the plaintiff in error, receive ten thousand dollars of the estate of the testator, as the surviving executor, if he did, then according to his promise, he was bound to pay five dollars to the plaintiffs below, and a verdict ought to have been given against him, but if not, then the event had not taken place, upon which he had promised to pay, and he stood acquitted or discharged from the plaintiff's claim.    It is obvious, as I have already said, that this was not the end for which this issue was intended or directed, but most likely, the same with that in the case already alluded to, that is, to ascertain what amount, if any, of the estate of the testator had come into the hands of the plaintiff in error, and with how much he was chargeable.    The foregoing observations have been made, in hopes that they may cause the attention of the judges of our Orphans' Courts to this subject, so that more care and precision may be observed in directing such issues, than seems to prevail.    The first error assigned is, that the court erred in charging the jury what the facts were, and instructing them to find accordingly.    The judge told the jury, that "the witnesses say that after the death of *Henry Rife, sr.* the two sons, (meaning *Henry* and *Daniel,* the executors named in the will,) took possession

27

(meaning of the personal property of the testator,) and afterwards *Daniel* sold his moiety to his brother *Henry*, for a large consideration.    *This establishes his possession,* and his transfer for a full consideration.  Each executor having taken one-half of the personal estate in his own right as devisee, and *Daniel* having converted his half into money, *it leaves him liable* to that extent, both to legatees and creditors.''  Now although the witnesses in giving testimony in chief, did say that the personal property went into the possession of *Henry* and *Daniel*, upon the death of the testator, yet in their cross-examination, they also said that they saw no difference in the use of the property before the testator's death and after it.  That *Henry* and *Daniel* both lived with him—that they knew nothing of *Daniel's taking particular possession of any part of it.  That Henry Rife acted as executor and managed things and collected money.*  They never saw *Daniel* make any contract or purchases or *transact any business as executor.  It was all done by Henry* so far as they knew, and the *property left with Henry* when *Daniel* went away.    *Daniel sold nothing, attended to nothing* as they knew of.    After this testimony was given to the jury, it does appear to me that the court in charging the jury as above, withdrew the facts from them, and substituted their notion of the facts in its place.    The transfer which the court speak of made by *Daniel* to his brother *Henry*, co-executor in the will, was merely a transfer of *Daniel's* right and interest under the will, as devisee or legatee.    To enable him to make such a transfer, it was not necessary that he should have taken possession of any part of the estate.    So that notwithstanding this transfer, the jury taking into consideration the whole of the parol testimony that was given, had it been left to them to decide the facts, might have found that *Daniel* never had intermeddled with the estate, by taking possession of any part of it; or at most, not more of it than perhaps a plough and team of horses, and even these, they, from the testimony, might have thought were under the immediate direction and control of his brother *Henry*.    Unless then he took the *actual possession* of the property, he was not liable; and in that case liable only for the value of what he did so take possession of.    Indeed it is most probable that the finding of the jury would have been in favor of *Daniel*, as the exonerating testimony came from the same witnesses that gave testimony which went to charge him.    It however, was a matter exclusively for their determination, and ought to have been submitted to them, to say whether, from the whole of the testimony *Daniel* had taken possession of any of the property, and if any, to what amount.    There was error committed by the court below, in not so leaving it to the jury.

The second error is, that the court instructed the jury, that the plaintiff in error, was chargeable with one-half of the inventory and

(Rife *v.* Galbreath.)

interest, and was not to be credited with one-half of the credits in *Henry's* account.

It appeared in evidence that *Henry* had settled his administration account of the estate, in which he had charged himself with the whole of the personal estate, amounting to two thousand six hundred and eleven dollars and fourteen and a half cents, and got credits amounting to one thousand six hundred and thirty-three dollars and seventy-one and a half cents, leaving only a balance unadministered of nine hundred and seventy-seven dollars and forty-three cents.   I here confess, that I do not comprehend or see, upon what principle the court below could, after this testimony was given, and which does not appear to have been contradicted, have directed the jury to charge *Daniel* with one-half of the estate. *Henry* having received the whole of it, had voluntarily charged himself with the whole of it.   The justice and correctness of this, is not disputed by his representatives.   He has accounted for and administered considerably more than the one-half of it; now in the worst probable state of things that can be imagined for *Daniel*, even if he had had the whole of the estate in his *exclusive* possession, and had delivered it over afterwards to *Henry*, he could not be charged with more than that portion of it which remained unaccounted for, and unadministered by *Henry*.   Suppose *Henry* had administered and accounted for the whole of it, will it be said that *Daniel* would be chargeable still with the one-half of it? Surely not.   There was error in this part of the charge also.

There is nothing in the third error.   The will was admissible to show that *Daniel* was a co-executor and what were the duties enjoined upon him by it.   If this were unnecessary, giving it in evidence could do him no possible injury.

Judgment reversed